1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARION LEE ROMO,

                    Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05046-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits. The parties have consented to have this matter heard

by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636(c), Federal Rule of Civil Procedure

73; Local Rule MJR 13. For the reasons set forth below, the Court affirms defendant's denial of

her application.

FACTUAL AND PROCEDURAL HISTORY

On July 13, 2011, plaintiff filed an application for disability insurance benefits, alleging

disability as of October 30, 2010. Dkt. 9, Administrative Record (AR) 15. That application was

denied on initial administrative review on March 30, 2012 and on reconsideration on July 18,

2012. *Id.* A hearing was held before an administrative law judge on July 31, 2013, at which

plaintiff, represented by counsel, appeared and testified, as did a vocational expert. AR 33-81.

In a decision dated August 30, 2013, the ALJ determined plaintiff to be not disabled. AR

15-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on

ORDER - 1

November 21, 2014, making the ALJ's decision the final decision of the Commissioner of Social

Security. AR 1; 20 C.F.R. § 404.981. On January 23, 2015, plaintiff filed a complaint in this

Court seeking judicial review of that decision. Dkt. 3. The administrative record was filed with

the Court on April 3, 2015. Dkt. 9. As the parties have completed their briefing, this matter is

now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the

record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the

record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be

capable of returning to her past relevant work. For the reasons set forth below, however, the

undersigned disagrees that the ALJ erred as alleged, and therefore affirms defendant's decision.

Although plaintiff requests oral argument in this matter, the undersigned finds such argument to

be unnecessary.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the

"proper legal standards" have been applied, and the "substantial evidence in the record as a

whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

*see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v.*

*Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial

evidence will, nevertheless, be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human*

*Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

ORDER - 2

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d

ORDER - 4

947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

D. Casey Jones, M.D., performed an independent orthopedic examination on February 2, 2011, diagnosing plaintiff with "[c]linical evidence of bilateral hand pattern osteoarthritis with some deformity" and a "[h]istory of triggering digits both hands." AR 425. Dr. Jones found that plaintiff was "fixed and stable," that no additional treatment was indicated and that plaintiff had "no ratable impairment." AR 426. On September 21, 2011, Alfred J. Blue, M.D. performed a second independent orthopedic examination, diagnosing plaintiff with a "[h]istory of stenosing tenosynovitis with surgical release, left middle finger," with "no evidence of any residual stenosing tenosynovitis." AR 333. Dr. Blue opined that plaintiff had "no restrictions" and that she was "able to work full time." *Id.*

Plaintiff underwent a third physical evaluation performed by Nathan Rosenberg, M.D., who – like Dr. Blue – diagnosed her with a history of stenosing tenosynovitis without evidence of that condition on examination, as well as "[m]ild osteoarthritis throughout multiple joints in [the] bilateral hands." AR 394. Dr. Rosenberg opined that plaintiff's diagnoses would not "impose any limitations for 12 continuous months." *Id.* After summarizing the findings of all three examining physicians (AR 21-22), the ALJ stated that he was giving "significant weight" to their opinions, but that in light of plaintiff's pain complaints and bilateral osteoarthritis, she was limited "to light work with no more than frequent handling and use of hand controls." AR 23-24. Specifically in regard to Dr. Rosenberg's opinion, the ALJ stated he was giving it

ORDER - 5

significant weight "because it was based on an in-person examination and was consistent with the doctor's clinical findings." *Id.*

Plaintiff challenges the ALJ's acceptance of Dr. Jones's and Dr. Blue's opinions – as well as the opinion of non-examining physician, Guillermo Rubio, M.D., who opined that plaintiff was able to perform a modified range of light work based on his review of the record (AR 24-25, 95-104) – on the basis that Dr. Jones's and Dr. Blue's examinations were performed for the purposes of evaluating her workers compensation claim, and thus did not take into account other conditions that could impact her ability to function. But plaintiff fails to show that even if Drs. Jones and Blue had considered other possible conditions, they – or Dr. Rubio – would have come to any different conclusions, particularly given the fairly unremarkable objective clinical findings their examinations produced. AR 419-26, 330-34, 392-94.

In regard to Dr. Rosenberg, plaintiff first asserts his expertise is in pediatrics and not orthopedics, implying that this should have resulted in the ALJ giving less weight to his opinion. Plaintiff, though, does not argue that Dr. Rosenberg is not a certified physician, and therefore is not capable of forming a professional opinion based on his expertise as a medical doctor. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (rejecting assumption that psychiatric evidence must be offered by board-certified psychiatrist, as under general principles of evidence law, primary care physician was qualified to give medical opinion on claimant's mental state as it related to her physical disability). As just discussed, furthermore, Dr. Jones and Dr. Blue are both orthopedic physicians, and their opinions concerning plaintiff's work-related capabilities are no more restrictive than that of Dr. Rosenberg.

Plaintiff further takes issue with the limited nature of the medical records Dr. Rosenberg was given to review. But since Dr. Rosenberg himself performed an evaluation of plaintiff, it is

far from clear that that fact alone is sufficient to call into question his opinion, as he clearly and

validly based his opinion on his own examination findings. Further, presumably Dr. Rubio had

access to all of the medical records at the time he formed his opinion, and plaintiff does not

argue he had an inadequate basis for forming that opinion in terms of what he reviewed, though

as discussed above she does challenge it on other bases.

Plaintiff also criticizes Dr. Rosenberg for not visualizing deformities in plaintiff's hands

while both Dr. Jones and Dr. Blue did, and for not assessing any functional limitations despite

plaintiff's self-report that activity made her hand pain worse and rest made it better. But again,

even if Dr. Rosenberg could be faulted for failing to visualize those deformities, neither of the

two examining orthopedists assessed any functional limitations either, and once more given the

fairly unremarkable objective clinical findings Dr. Rosenberg obtained (AR 393-94), it is not at

all clear why he should have credited plaintiff's self-reported symptoms in forming his opinion

or give that self-report more weight than those objective findings.

Lastly in terms of the medical opinion evidence, plaintiff challenges the ALJ's following

additional findings:

> On June 10, 2013, Paul Osmun, D.O., a treating physician, opined that the
> claimant was unable to work in an occupation that required significant use of
> her hands (12F/3). One month later, on July 8, 2013, Dr. Osmun completed a
> physical residual functional capacity questionnaire in which Dr. Osmun
> opined that the claimant could use her hands for five percent of the workday,
> engage in fine manipulations less than five percent of the workday, and use
> her arms to reach for five percent of the workday (13F/8). The undersigned
> gives little weight to the hand limitations assessed in these opinions because
> they are only a month apart and they are inconsistent with each other.
> Moreover, Dr. Osmun failed to provide objective findings to support this
> degree of limitation and the longitudinal record does not support this degree of
> limitations (1F; 3F; 9F).

> In the July 2013 physical residual functional capacity questionnaire, Dr.
> Osmun stated that the claimant's hand pain was severe enough to frequently
> interfere with her attention and concentration (13F). Dr. Osmun further stated

that the claimant could rarely lift less than 10 pounds, would need
unscheduled breaks, and would be absent from work about two days per
month. The undersigned gives little weight to Dr. Osmun's opinion in Exhibit
13F because he lacks a basis in examination or treatment to provide this
opinion. Dr. Osmun has not treated the claimant since 2010 (11F; 14F).
Moreover, Dr. Osmun's opinion is inconsistent with [the] claimant's treatment
notes, which show that the claimant's condition improved after the trigger
finger release and she was released to casino surveillance work and a
receptionist type job (14F/5, 8). In addition, Dr. Osmun's opinion is
inconsistent with the opinions from Dr. Jones, Dr. Blue, and Dr. Rosenberg
who all found that the claimant's impairments imposed no limitations (1F; 3F;
9F). Finally, Dr. Osmun's opinion is inconsistent with the claimant's activities
of daily living. The claimant testified that she lived alone and she reported that
she performed all of her housework including vacuuming, mopping, and doing
the dishes (3F/3).

In addition, in the July 2013 questionnaire Dr. Osmun stated that due to the
claimant's depression she was only capable of low stress jobs (13F/5). The
undersigned gives little weight to this opinion because it is inconsistent with
the claimant's own statement. During the psychological consultative
examination, the claimant reported that her depression was adequately treated
and she received good resolution of her symptoms with Wellbutrin (4F/2). In
addition, the claimant did not testify to having any mental limitation at the
hearing.

AR 24. Although plaintiff asserts these are not valid reasons for rejecting Dr. Osmun's opinions,

the Court finds that overall the ALJ did not err here.

The Court does agree that the ALJ erred in discounting those opinions on the perceived

inconsistency between Dr. Osmun's June 2013 opinion that plaintiff could not do work requiring

significant use of her hands, and his July 2013 opinion that she would be unable to use her hands

for more than five percent of the workday, as the later more specific limitation clearly constitutes

a significant limitation in the use thereof. On the other hand, the Court finds the ALJ did not err

in rejecting Dr. Osmun's opinion on the basis that the longitudinal medical record, including his

own treatment notes, do not support the degree of limitation found. *See* AR 341-58, 360-77, 379-

83, 385-89; *Batson*, 359 F.3d at 1195. Plaintiff further argues the ALJ's findings here evidence a

fundamental lack of understanding of the nature of medical records, namely that such records are

ORDER - 8

generally not set up to record functional impact.

Be that as it may, the fact remains that the ALJ was correct in pointing out the lack of supportive objective clinical findings in the record, and using that as a basis for discounting Dr. Osmun's opinion. Plaintiff asserts the functional limitations assessed by Dr. Osmun come from more than three years knowledge of his patient. But while a long-standing treating relationship is the major reason why treating  physician opinions generally are entitled to more weight, without at least some supportive objective clinical evidence that relationship alone will not be sufficient to overcome the opinions of other, examining physicians in the record that are supported by independent findings. *See Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007) ("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (citations omitted). In addition, as the ALJ points out, the last time Dr. Osmun treated plaintiff was nearly three years prior to his functional assessment. AR 381, 455.

Plaintiff also takes issue with the ALJ's rejection of Dr. Osmun's opinions on the basis that her hand and mental health conditions improved with treatment. As for the hand condition, plaintiff does not contest that improvement occurred, but again argues that "[a]ny sort of work release was based upon the single condition related to the trigger finger and did not take into consideration the other medical conditions" she asserts were not considered in relation to the examinations of Dr. Jones and Dr. Blue. Dkt. 11, p. 9. The Court already has rejected that argument for the reasons noted above. Further, while plaintiff argues her mental health condition has worsened, the most recent treatment and examination findings in the record – including a March 2012 consultative psychiatric evaluation – for the most part shows otherwise. *See* AR 343, 358, 361, 365, 368, 377, 379-81, 383, 387-89, 396-401, 433, 445.

ORDER - 9

II.    <u>The ALJ's Assessment of Plaintiff's Credibility</u>

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ discounted plaintiff's credibility in part because the objective medical evidence was inconsistent with the degree of impairment alleged, which is a proper basis for doing so. AR

20-21; *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff does not specifically challenge this stated reason for discounting her credibility, and as discussed above the ALJ did not err in evaluating the medical evidence in the record. The ALJ next found plaintiff to be less than fully credible because the record shows her condition improved following her trigger finger release, which again plaintiff does not specifically challenge and which as also discussed above the ALJ did not err in so finding. *Morgan*, 169 F.3d at 599; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ provided several other reasons for discounting plaintiff's credibility, which are expressly challenged here:

> [T]he record reflects significant gaps in the claimant's treatment history after she underwent the trigger release surgery, indicating her condition was not bothersome enough to require additional attention, undermining her claim of disabling limitations. There are only a few incidents of treatment. On March 12, 2012, the claimant presented to Yelm Family Medical complaining of Vertigo (5F/4). On April 9, 2012, the claimant returned to Yelm Family Medical reporting bilateral hand pain but she left without being seen (7F; 5F/5; 10F/4). The lack of treatment suggests that her symptoms were not serious enough to seek treatment.
>
> Additionally, the claimant has contradicted herself several times in statements to providers and the [Social Security] Administration. Initially, the claimant testified that when she was placed on light duty at Darigold she sat at a desk and did not do anything. However, when questioned further she testified that once the person who normally occupied the job moved to a different job she made copies, handled mailing, gave directions to people who entered the building, and answered the telephone.
>
> The claimant testified that any activity that required her to grab something caused pain in her hands. She testified that after about 5-10 minutes of performing activities with her hand she had to stop and rest due to pain. In the Function Report, the claimant stated that her hands hurt after a few minutes (5E/10). However, Tammy Filkins, the claimant's daughter, reported that the claimant could use her hands for an hour before she started having major pain (6E/5).
>
> The claimant reported that on average her pain was at a 7 (3E/2). However, the claimant reported that the only medication she took for pain was Aleve

ORDER - 11

(3F/3), an over-the-counter pain medication. The lack of need for stronger pain relief undermines the credibility of the degree of pain and limitation she asserted.

The claimant testified that she applied for unemployment [sic] 2011 and she received unemployment benefits until around the first quarter of 2013. She testified that while [sic] was receiving unemployment benefits she reported that she was looking for full time work, but in reality she was only looking for part-time jobs. The fact that the claimant was willing to withhold information to obtain benefits and report that she was seeking full-time work when she was not diminishes her credibility. The claimant's willingness to withhold information from the employment security department indicates she may also be willing to withhold information from the Social Security Administration to obtain benefits. This is not a situation where the state determined less than full-time work was suitable due to a disability (WAC 192-170-050). Rather, it is a situation involving the reliability of the claimant's reports in order to qualify for benefits.

The claimant's level of functioning is inconsistent with her claims of disability. The claimant's activities include preparing meals on a daily basis, watching television, vacuuming once a week, washing laundry once a week, and shopping in stores on a weekly basis (5E). The claimant also reported that she painted oil landscapes on a daily basis but it was difficult for her because of her hand pain (5E/9). She further reported that she participated in cancer walks and volunteered for community events (5E/9). During the February 2012 physical consultative examination, the claimant stated that she performed all of her housework including vacuuming, mopping, and doing dishes (3F/3).

AR 22-23.

The Court agrees with plaintiff that the ALJ erred in relying on the report of Ms. Filkins regarding use of her hands to discount her credibility, given that as discussed below the ALJ also rejected Ms. Filkins' statements in general due to the infrequency of her contact with plaintiff, and thus found Ms. Filkins "lacks the foundation to provide an accurate depiction of [plaintiff's] functioning." AR 25. In other words, if Ms. Filkins is unable to provide an accurate depiction of plaintiff's functioning, then the ALJ cannot rely on Ms. Filkins' statement concerning plaintiff's use of her hands to discount plaintiff's credibility. The Court also agrees the ALJ erred in relying on plaintiff's activities of daily living to discount her credibility, given that the overall evidence

ORDER - 12

in the record fails to establish she performed such activities at a frequency or to an extent that necessarily shows they are transferable to a work setting or that they otherwise contradict her other testimony. *See* AR 253-59, 300, 392, 398; *Orn*, 495 F.3d at 639; *Smolen*, 80 F.3d at 1284 n.7.

The other stated reasons for discounting plaintiff's credibility, however, the Court finds to be proper. Failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, noting the fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for supposedly excruciating pain).

Plaintiff contests the ALJ's statement that there are significant gaps in her treatment, as she has received treatment "throughout the whole period." Dkt. 11, p. 11. But as the ALJ points out, only a few incidents of treatment subsequent to the alleged onset date of disability appear in the record. AR 433, 444-45, 461-66. Plaintiff also asserts that if the ALJ was concerned about her lack of treatment, he should have asked about it at the hearing "instead of ambushing [her] in the decision." Dkt. 11, p. 12. However, there is no evidence that plaintiff was unaware of what the medical evidence in this case revealed concerning treatment, and the ALJ's duty to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Neither circumstance exists here.

ORDER - 13

It is true that an ALJ may not discount a claimant's credibility based on failure to seek or lack of treatment, when a good reason exists to explain that failure. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see also* SSR 96-7p, 1996 WL 374186, at *7 (ALJ must not draw any inferences about claimant's symptoms and their functional effects from his or her failure to follow prescribed treatment, without first considering any explanations claimant may provide or other information in record which may explain that failure). Plaintiff states she testified that she was told there was not much more that could be done to treat her condition. However, actual treatment records fail to support that assertion. Likewise, while plaintiff also testified that she does not like taking pain pills because she does not want to become addicted to them (AR 58), and her brother reported that she told him the type of medication she was taking upset her stomach (AR 322), again treatment records do not reflect she communicated these concerns to her treatment providers or that she made any efforts to seek alternative treatment methods.

Plaintiff argues the fact that she received unemployment is not a determinative factor in denying disability. The Ninth Circuit has recognized, however, that "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime." *Carmickle*, 533 F.3d at 1161-62. Thus, where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," since "[o]nly the former is inconsistent with his disability allegations." *Id.* Here, though, plaintiff specifically testified that she was only looking for work part-time while at the same time reporting she was looking for full-time work. AR 47-48. The ALJ therefore was not remiss in discounting her credibility on this basis. While plaintiff faults the ALJ for not questioning her further on this issue, the record reveals the ALJ's questioning to

ORDER - 14

1    have been fairly in depth, and plaintiff's testimony on this issue is clear. *Id.*

2    Plaintiff also faults the ALJ for discounting her credibility based on the contradictory

3    statements she made to her treatment providers concerning the nature and extent of the work she

4    did when placed on light duty. Although plaintiff's testimony in regard thereto may not be as

5    clear as it could have been, it also is not entirely contradictory – or at least not to the extent that it

6    necessarily reflects poorly on her credibility (AR 43-46) – and therefore this is not a clear and

7    convincing reason for finding her to be less than fully credible. Nevertheless, the fact that some

8    of the reasons for discounting plaintiff's credibility were improper does not render the ALJ's

9    credibility determination invalid, as long as that determination is supported by substantial

10   evidence in the record, as it is in this case for the reasons noted above. *Tonapetyan*, 242 F.3d at

11   1148; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (while

12   ALJ relied on improper reason for discounting claimant's credibility, he presented other valid,

13   independent bases for doing so, each with "ample support in the record").

14

15   III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

16       Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

17   take into account," unless the ALJ "expressly determines to disregard such testimony and gives

18   reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

19   In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

20   germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

21   link his determination to those reasons," and substantial evidence supports the ALJ's decision.

22   *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*,

23   694 F.2d at 642.

24       The record contains lay witness statements from plaintiff's brother and two daughters, in

25

26

ORDER - 15

1  regard to which the ALJ found as follows:

2        Tammy Filkins, the claimant's daughter, completed a third party function
3        report on October 25, 2011 (6E). Mrs. Flikins stated that the claimant had
       difficulty lifting and using her hands (3E/6). Mrs. Filkins stated that the
4        claimant could use her hands for an hour before she started having major hand
       pain. However, Mrs. Filkins stated that she only saw the claimant three times
5        per month for dinner (6E/4). She responded that she did not know to [sic]
       many of the questions about the claimant's activities of daily living. The
6        undersigned has considered Mrs. Filkin's [sic] statements. However, the
       undersigned gives little weight to Mrs. Filkin's [sic] statements due to the
7        infrequency of her contact with the claimant. Mrs. Filkin [sic] lacks the
       foundation to provide an accurate depiction of the claimant's functioning.
8

9        Tina Romo, the claimant's daughter, wrote a statement on behalf of the
       claimant on August 22, 2012 (14E). Ms. Romo stated that the claimant was
10       always in pain and that using her hands for the simplest tasks worsened her
       pain. Ms. Romo further stated that the claimant was unable to perform
11       everyday tasks at home because of the constant pain in her hands. This is
       inconsistent with the claimant's own description of her activities. The
12       claimant reported that she was able to perform self-care, vacuum, mop, and
       wash dishes (3F/3). Therefore, the undersigned gives Ms. Romo's statements
13       little weight.

14
       In May of 2013 Jerry Jay, the claimant's brother, wrote a statement on behalf
15       of the claimant (20E). Mr. Jay stated that the claimant had trouble using her
       hands. Mr. Jay further stated that the claimant was depressed because she
16       could not do the things that she used to do and consequently, she isolated
       herself. Mr. Jay's assertion that the claimant isolated herself is inconsistent
17       with her statements during the psychological consultative examination.
       During the psychological consultative examination, the claimant reported that
18       her depression was adequately treated with Wellburtin [sic] and was in
       remission (4F). In addition, the claimant did not mention any problems with
19       isolation in the hearing or to her medical providers. The undersigned has
       considered Mr. Jay's statements but his estimation of the degree of the
20       claimant's limitations are simply not consistent with the preponderance of the
       opinions and observations by medical doctors in this case.
21

22

23  AR 25. Plaintiff argues the ALJ erred in rejecting Ms. Filkins' statements due to the infrequency

24  with which she saw plaintiff, asserting that "the fact that she saw her mother about three times a

25  month does not discredit the information she provided on the questions she was able to answer."

26  Dkt. 11, p. 15. In addition to admitting she saw plaintiff only three times per month for dinner,

ORDER - 16

however, as the ALJ pointed out Ms. Filkins also reported that she did not know the answer to many of the questions concerning plaintiff's activities. *See* AR 265-71. This clearly calls into doubt Ms. Filkins' personal knowledge regarding plaintiff's level of functioning, and therefore the ALJ did not err in rejecting her testimony on this basis.

Citing *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009), plaintiff argues the ALJ also erred in rejecting her brother's statements because they are inconsistent with the preponderance of the medical opinion evidence in the record. In *Bruce*, the Ninth Circuit held it was improper for the ALJ to have discredited the testimony of the claimant's wife as being not supported by the medical evidence. As explained by United States Magistrate Judge Mary Alice Theiler, however, *Bruce* is distinguishable:

> [I]n *Bruce* . . . the Court rejected as improper the ALJ's reasoning that the lay testimony was "not supported by the objective medical evidence." 557 F.3d at 1116. The ALJ in *Bruce* did not point to any specific evidence, contradictory or otherwise, in support of this conclusion. Instead, the ALJ *appeared to discount in general the value of lay testimony in comparison to objective medical evidence*. *Smolen*, cited in *Bruce*, can be similarly distinguished.  In that case, the Court noted that the claimant's disability was based on fatigue and pain, that the medical records were "sparse" and did not "provide adequate documentation of those symptoms[,]" and that . . . the ALJ was consequently required to consider the lay testimony as to those symptoms. 80 F.3d at 1288-89.  The ALJ in *Smolen*, therefore, had erred in rejecting the lay testimony because " 'medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation.' " *Id.* at 1289. As in *Bruce*, the ALJ *essentially rejected the value of lay testimony as compared to objective medical evidence*.

*Staley v. Astrue*, 2010 WL 3230818 * (W.D. Wash. 2010) (emphasis added). Likewise, here the ALJ discounted plaintiff's brother's statements because of their inconsistency with the medical evidence in the record, and *not* because he found in general the value of his statements to be less than that provided by the medical evidence. In addition, the ALJ rejected Mr. Jay's statements concerning the impact of plaintiff's depression because plaintiff herself reported that her mental

ORDER - 17

1   health condition had improved with treatment, and because she did not mention the problems Mr.

2   Jay noted to her treatment providers or at the hearing, both of which are valid bases for rejecting

3   her brother's testimony.

4        As for the statements from plaintiff's other daughter, Tina Romo, the Court agrees that

5   for the most part her daughter's comments concerning plaintiff's activities are not inconsistent

6   with plaintiff's own reports regarding the same and the impact her impairments have had on her

7   ability to perform them. *See* AR 253-59, 300, 392, 398. The Court, however, finds this error to

8   be harmless, as it would not have affected the ALJ's "ultimate decision," given that Ms. Romo's

9   statements are similar to those of plaintiff, and the ALJ did not err in finding plaintiff to be less

10  than fully credible with respect thereto. *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see*

11  *also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless

12  where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion);

13  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685 (9th Cir. 2009) ("In light of our conclusion

14  that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective

15  complaints, and because [the lay witness's] testimony was similar to such complaints, it follows

16  that the ALJ also gave germane reasons for rejecting her testimony."); *see also Molina v. Astrue*,

17  674 F.3d 1104, 1114 (9th Cir. 2012).

IV.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

        Defendant employs a five-step "sequential evaluation process" to determine whether a

claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled

at any particular step thereof, the disability determination is made at that step, and the sequential

evaluation process ends. *Id.* If a disability determination "cannot be made on the basis of medical

factors alone at step three of that process," the ALJ must identify the claimant's "functional

ORDER - 18

limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184, at *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *Id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

> **to perform light work . . . that does not require more than frequent pushing, pulling, or use of hand controls; that does not require more than frequent handling; that does not require climbing of ladders, ropes, or scaffolds, that does not require more than frequent balancing, stooping, kneeling, crouching, or climbing of ramps or stairs; that does not require more than occasional crawling; that does not require concentrated exposure to extreme cold or vibration; and that does not require exposure to hazards such as open machinery or unprotected heights.**

AR 19-20 (emphasis in original). Plaintiff argues that in light of the ALJ's errors in evaluating the medical and other evidence in the record, this RFC assessment is not supported by substantial evidence. As discussed above, though, the ALJ did not commit reversible error in evaluating that evidence, and therefore here too he did not err.

V.   The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be

ORDER - 19

capable of performing her past relevant work as both an office helper and a surveillance system
monitor, further specifically finding that:

> The claimant first testified that when she performed the office helper job with
> another employee she mostly sat at the desk and did not do much. However,
> she further testified that she did solely perform the job duties of an office
> helper when the employee left the position to go to another job. The
> vocational expert, Kelly Hember, testified that it sounded as though the
> claimant was not performing all the tasks at first, but when she filled in for the
> other employee she performed all the tasks a person in that position in a
> competitive job would perform. Regardless of whether she always performed
> all the tasks or whether she shared some of the tasks, she did perform them
> long enough to learn how to do them and she retained the residual functional
> capacity to do that work, both as she performed it and as it is generally
> performed. Additionally, the claimant did the surveillance system monitor job
> that was assigned to her. The claimant kept a log while working as a
> surveillance system monitor. She testified that when she asked her boss about
> the need for the work she was doing, her boss told her company needed it
> done. It appears form the claimant's reports that this work [sic] normally done
> for pay or profit, as the company told her it was needed, assigned her to do it,
> and paid her for her work. This description deserves more weight than Ms.
> Hember's testimony that it did not sound like a true job. The claimant
> performed the work as a surveillance system monitor long enough to learn
> how to do it. The undersigned finds that she is able to perform it as she
> actually performed it.

AR 26. The claimant has the burden at step four of showing that he or she is unable to return to
his or her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Court agrees the ALJ erred in finding plaintiff to be capable of performing the job of
surveillance system monitor, given Ms. Hember's testimony that it did not sound like she was
"performing work that actually existed within the . . . company" (AR 65), and the ALJ gave no
basis for questioning Ms. Hember's vocational expertise or explanation as to why his opinion as
to the vocational requirements for performing that job – as opposed to the legal conclusion of
what constitutes past relevant work – is entitled to more weight. On the other hand, plaintiff has
not challenged the ALJ's alternate determination that she could perform the office helper job,
other than to argue that the limitations assessed by Dr. Osmun would preclude all work based on

ORDER - 20

the vocational expert's testimony. As discussed above, however, the ALJ did not err in rejecting those limitations, and therefore did not err either in finding plaintiff to be capable of performing that job or in finding her not disabled at step four on this basis.

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 14th day of December, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 21